IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD TERHUNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 7865 |
| | ) | |
| THE BOARD OF EDUCATION OF ZION | ) | |
| ELEMENTARY SCHOOL DISTRICT 6, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss and motion to strike. For the reasons stated below, the motion to dismiss is granted in part denied in part and the motion to strike is stricken as moot.

**BACKGROUND**

Plaintiff Richard Terhune (Terhune) alleges that he was hired by Defendant The Board of Education of Zion Elementary School District 6 (Board) in 2005 as an Assistant Superintendent of Business Services for one-year renewable contracts.

Terhune contends that he reported directly to Defendant John Ahlgrim (Ahlgrim), the Superintendent of Zion Elementary School District 6 (District). Terhune claims that he acquired tenure in 2009. According to Terhune, each year his employment contract was renewed until the contract for the 2011-12 school year. Terhune claims that Ahlgrim, in an attempt to justify not renewing Terhune's contract, falsely alleged performance deficiencies by Terhune. Ahlgrim allegedly recommended to the Board that Terhune's contract not be renewed. Subsequently, Terhune allegedly requested that he be reassigned to a classroom for the 2011-12 school year, but Ahlgrim suggested that Terhune take a new administrator position instead of being reassigned to the classroom. Terhune contends that, as a tenured teacher, he was entitled to a reassignment in a classroom position as a physical education teacher. On March 21, 2011, the Board allegedly issued to Terhune a notice of non-renewal, informing him that due to a reduction in force (RIF), he would not be re-employed for the 2011-12 school year. Terhune contends that he was the only employee subjected to the RIF and that such action violated the seniority rights provided in the school code. Terhune brought the instant action and includes in his complaint an age discrimination claim brought against the Board pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Count I), a tortious interference with contract claim brought against Ahlgrim (Count II), a tortious interference with

prospective economic advantage claim brought against Ahlgrim (Count III), retaliatory discharge claims brought against Ahlgrim and the Board (Count IV), and claims brought against Ahlgrim and the Board pursuant to 42 U.S.C. § 1983 (Section 1983), alleging a violation of Terhune's due process rights (Count V). Defendants move to dismiss the claims in the complaint and move to strike certain portions of the complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007));

3

*see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted). Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## DISCUSSION

I. ADEA Claim (Count I)

Defendants argue that Terhune has not presented sufficient facts to state a valid ADEA claim. Defendants contend that the court should dismiss the ADEA claim because Terhune has not pled facts for a *prima facie* case under the *McDonnell Douglas* burden-shifting method. (Mot. 3); (Reply 2). However, the *McDonell-Douglas* burden-shifting method is applied at the summary judgment stage, not at the pleading stage. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). The Supreme Court has explained in an ADEA case that "[t]he prima facie case under

4

*McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement," and that the "Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* In fact, in the opinion cited by Defendants in support of the proposition that a plaintiff must plead a *prima facie* case in the complaint to defeat a motion to dismiss, the Seventh Circuit was reviewing a ruling by the district court granting the defendant's motion for summary judgment, not a motion to dismiss. *Atanus v. Perry*, 520 F.3d 662, 666-67, 670-71 (7th Cir. 2008).

Although Terhune does not have to establish a prima facie case, as indicated above, he still must allege sufficient facts to plausibly suggest that he was discriminated against because of his age. Terhune's own allegations indicate that while he was over 50, he worked for the District and that the Board renewed his contract for five straight years, and that he received a pay increase each year. (Compl. Par. 7, 9, 15, 16, 17). Terhune also alleges that Ahlgrim offered to place Terhune in an administrator position if the Board did not decide to renew his contract for the 2011-12 school year. (Compl. Par. 59). Such actions do not suggest that the Board had an animus against Terhune because of his age.

Terhune also lays out in his complaint an extensive series of allegations

5

relating to Terhune's involvement with a contract for technology services (Net56 Contract). Terhune contends that "he spoke to [Ahlgrim] about [his] concerns regarding the Net56 contract," which led to an audit, and to a significant loss of funds to the District. (Compl. Par. 31-35). Terhune alleges that after his expression of concern regarding the Net56 Contract led to the financial loss to the District, "[i]n Terhune's evaluation, Superintendent Ahlgrim discussed the Net56 contract at length, blaming Terhune for problems with the contract and services." (Compl. Par. 40). Terhune further alleges that Ahlgrim's accusations" relating to the Net56 Contract "were false and that Ahlgrim "intentionally used [the] allegations to deflect blame for the New56 problem." (Compl. Par. 40). It is the unsatisfactory performance evaluation that Terhune contends then led to other false statements about his performance and ultimately led to the non-renewal of his contract and the notice of the RIF. Thus, Terhune's own allegations, which the court must accept as true at this stage of the proceedings, suggest that adverse actions were allegedly taken against him by Defendants based on an animus relating to the Net56 Contract, not based on an animus against Terhune because of his age. Based on the above, Terhune has failed to present allegations that plausibly suggest that he was discriminated against because of his age. Therefore, Defendants' motion to dismiss the ADEA claim is granted.

II.  Tortious Interference with Contract Claim (Count II)

Defendants argue that Terhune has failed to allege facts to state a tortious interference with contract claim.  For a tortious interference with contract claim brought under Illinois law, a plaintiff must establish: (1) "that he had a valid and enforceable contract with" a party, (2) that the defendant "was aware of the contractual relationship" with the party, (3) that the defendant "intentionally and without justification induced [the party] to breach the contract," (4) that "the subsequent breach was caused by" the defendant, and (5) that the plaintiff "sustained damages."  *Nation v. American Capital, Ltd.*, 682 F.3d 648, 651 (7th Cir. 2012).

A.  Breach of Contractual Obligation

Defendants argue that Terhune does not allege facts that suggest that the terms of any contract he entered into with the Board were breached by the Board.

1.  Renewable Written Contract

Terhune argues that Ahlgrim interfered with the renewal of his contract as an Assistant Superintendent for the 2011-12 school year.  However, as Defendants correctly point out, according to Terhune's own pleadings, he entered into a new

7

contract for the Assistant Superintendent position with the Board each year. Terhune's own allegations indicate that he never entered into a contract with the Board for the 2011-12 school year for the Assistant Superintendent position. Thus, Ahlgrim could not have interfered with a contractual relationship that never existed. Nor are there allegations that the Board breached any term of any contract it entered into with Terhune in regard to the Assistant Superintendent position.

### 2. Reduction in Force

Terhune also argues that he had a right to be reassigned to a class room teaching position. Terhune alleges that the RIF violated Terhune's seniority rights set forth in 105 ILCS 5/24-12. (Compl. Par. 68). However, Terhune does not offer facts to suggest that the statutory rights identified by Terhune were part of a written contract with the Board. Terhune's argument concerning the RIF fails to relate to a contractual relationship that would support a tortious interference with contract claim.

### 3. Future Expectations

Terhune also argues in his response to the instant motion that he "had an enforceable expectation of contract renewals and continued employment with the"

8

Board. (Ans. 7). However, according to Terhune's own allegations, at the end of the 2010-11 school year when his contract expired, he became an at-will employee. The allegations concerning Terhune's future expectations and Ahlgrim's alleged interference with the future relationship between Terhune and the Board would only be relevant to the tortious interference with prospective economic advantage claim, not the tortious interference with contract claim. *See Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, 2010 WL 1172565, at *2 (N.D. Ill. 2010)(stating that "under Illinois law, an action for tortious interference with a contract that is terminable at will is properly classified as a claim of intentional interference with prospective economic advantage").

### B. Inducement to Breach Contractual Obligations

Terhune contends that Ahlgrim "intentionally induc[ed] the Board to not renew its contract with" Terhune. (Ans. 9). Terhune also alleges that Ahlgrim "falsely alleged performance deficiencies as the reason for not renewing his contract," and that Ahlgrim told Terhune that if he did not accept a position as an administrator, Ahlgrim would "remove Terhune through a reduction-in-force." (Compl. Par. 59). Terhune does not, however, allege facts that suggest that Ahlgrim somehow misled or persuaded the Board that Terhune had a poor work performance

9

or that the RIF was appropriate. Instead, Terhune alleges that the Board was fully aware that Ahlgrim allegedly gave false reasons for recommending that Terhune's contract not be renewed and that in "[i]mposing the RIF, the Board knowingly violated Terhune's seniority rights. . . ." (Compl. Par. 47, 68). Such facts do not suggest that Ahlgrim induced the Board to breach any contractual rights.

### C. Third Party

Defendants argue that Terhune has failed to state a tortious interference with contract claim because Ahlgrim is an agent of the Board. Generally, a tortious interference with contract claim will not stand against an agent of the third party that has formed the contractual relationship with the plaintiff unless the agent was acting solely in his own self interests. *See Muthuswamy v. Burke*, 646 N.E.2d 616, 621 (Ill. App. Ct. 1993)(stating that "[a] corporate employee will not be liable for wrongful interference where he is acting on behalf of the interests of the employer"). Terhune alleges facts that suggest that Ahlgrim was an agent of the Board. Terhune argues in response to the instant motion in a conclusory fashion that, although Ahlgrim was an agent of the Board, Ahlgrim was acting in his own self interests "and against the interests" of the his employer, and that Ahlgrim was therefore acting outside the scope of his employment. (Ans. 8). However, as indicated above, Terhune's own

10

allegations state that the Board was fully aware that the poor performance reviews may not have been justified and that the RIF may have been improper. In spite of such knowledge, the Board allegedly decided not to renew Terhune's contract and to approve the RIF. Thus, Terhune has not alleged facts that suggest that Ahlgrim was acting against the interests of his employer. Therefore, based on the above, Defendants' motion to dismiss the tortious interference with contract claim (Count II) is granted.

III.  Tortious Interference with Prospective Economic Advantage Claim (Count III)

Defendants argue that Terhune has failed to allege sufficient facts to state a tortious interference with prospective economic advantage claim. For a tortious interference with prospective economic advantage claim brought under Illinois law, a plaintiff must establish: (1) "a reasonable expectancy of entering into a valid business relationship," (2) "the defendant's knowledge of the expectancy," (3) "an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy," and (4) "damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007)(quoting *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001)(internal quotations omitted); *Botvinick v. Rush University*

*Medical Center*, 574 F.3d 414, 417 (7th Cir. 2009)(same).

Terhune argues that because of his status in the school and because his prior contracts had been routinely renewed, he had a reasonable expectation of future employment with the Board. Terhune further contends that Ahlgrim falsely represented that Terhune's work performance was poor in order to prevent the fruition of what otherwise would have been a new one-year contractual relationship between Terhune and the Board. However, as indicated above, Terhune's own allegations state that the Board knew that Ahlgrim allegedly gave false reasons to support his recommendation that Terhune's contract not be renewed, and further knew that the RIF may have been improper. Thus, according to Terhune's own allegations, Ahlgrim's alleged conduct did not prevent a contract from forming between Terhune and the Board that otherwise would have formed. In addition, as explained above in regard to the tortious interference with contract claim, the allegations suggest that Ahlgrim was an agent of the Board, acting in the interests of the Board instead of a third party. Therefore, Defendants' motion to dismiss the tortious interference with prospective economic advantage claim (Count III) is granted.

IV.  Retaliatory Discharge Claims (Count IV)

Defendants argue that Terhune has not alleged sufficient facts to state a valid retaliatory discharge claim.  For a retaliatory discharge claim brought under Illinois law, a plaintiff must establish: (1) that the plaintiff was "discharged," (2) that the plaintiff was discharged "in retaliation for h[is] activities," and (3) that "the discharge violated a clear mandate of public policy."  *Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011).  In the instant action, Terhune does not allege facts that indicate that he was discharged from his employment.   Terhune alleges that he entered into a one-year contract for the 2010-11 school year and does not allege that he was discharged prior to the term of that contract.  Terhune also alleges that he received the notice of the RIF and that he was not given a position for the 2011-12 school year.  Terhune's allegations reflect that even after Ahlgrim recommended to the Board that Terhune's contract not be renewed, Ahlgrim suggested that Terhune take an administrator position, but Terhune chose not to take the offer.  Based on all of the above, Terhune has not alleged facts that suggest that he was discharged or that the discharge was in retaliation for any protected activity.  Terhune has also failed to allege a discharge in violation of a clear mandate of public policy.  Although Terhune contends that he made certain objections relating to the handling of the Net56 Contract, the allegations indicate that Terhune was merely acting in his role as

13

the Assistant Superintendent of Business Services. Nothing indicates that Terhune was speaking out on a matter of public concern. An internal dispute on how certain contract matters should be handled by the District does not raise concerns relating to the violation of a clear mandate of public policy. Therefore, based on the above, Defendants' motion to dismiss the retaliatory discharge claims (Count IV) is granted.

V. Due Process Claim (Count V)

Defendants argue that Terhune has not named the proper Defendant for the due process claim (Count V). Defendants argue that Terhune specifically seeks relief on his due process claim against the District, which is not a defendant in this case. Defendants argue that the due process claim must be dismissed because Terhune is seeking relief from a non-party. Terhune indicates that he named the Board as a Defendant since it is the governing body of the District. Defendants correctly point out that Terhune seeks relief in Count V for alleged constitutional violations caused by the District. (Compl. Par. 127). However, the body of Count V clearly indicates that he is seeking relief against the Board, when Terhune indicates that the Board deprived Terhune of his property right. (Compl. Par. 120). Terhune claims that he is a tenured teacher and that he was denied his various rights as a tenured teacher in violation of his due process rights. Even though the allegations by Terhune indicate

14

that he was employed as an administrator, and not a teacher, since at the pleadings stage, the court must accept as true Terhune's allegations, Terhune has presented sufficient allegations for his due process claim at this juncture. At the summary judgment stage, Terhune will need to point to sufficient evidence to support his due process claim and cannot rely on allegations. Therefore, Defendants' motion to dismiss the due process claim (Count V) is denied.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss Counts I, II, III, and IV are granted and Defendants' motion to dismiss Count V is denied. Defendants' motion to strike is stricken as moot.

                                                  _____
                                                  Samuel Der-Yeghiayan
                                                  United States District Court Judge

Dated: February 20, 2013